UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAVINDER DHILLON, | No. 2:14-cv-1833 KJN P |
| Petitioner, | |
| v. | ORDER |
| LONG, WARDEN, | |
| Respondent. | |

I. Introduction

    Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both parties consented to proceed before the undersigned for all purposes. See 28 U.S.C. § 636(c). Petitioner challenges his 2012 conviction of attempted criminal threat and violating a protective order. Petitioner claims that the state courts violated petitioner's due process rights by admitting prejudicial prior abuse evidence to demonstrate propensity to commit the instant offense. After careful review of the record, this court concludes that the petition should be denied.

II. Procedural History

    An amended information charged petitioner with making criminal threats that would result in death and great bodily injury, California Penal Code § 422 -- count one), and violating a protective order, a misdemeanor under California Penal Code § 166, subd. (c)(1) -- count two).

1

The information further alleged that petitioner was convicted in 2006 of criminal threats pursuant to California Penal Code § 422, within the meaning of California Penal Code sections 667, subdivisions (a) and (b) through (i), and 1170.12.

On December 21, 2012, a jury found petitioner not guilty of criminal threats but guilty of the lesser offense of attempted criminal threats, California Penal Code §§ 664/422. The jury convicted petitioner of violating the protective order. Petitioner admitted the 2006 prior conviction. On January 16, 2013, petitioner was sentenced to eight years in state prison.

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. The Court of Appeal affirmed the conviction on February 26, 2014. (Respondent's Lodged Document ("LD") No. 7.)

Petitioner filed a petition for review in the California Supreme Court, which was denied on May 14, 2014. (LD No. 9.)

Petitioner filed no post-conviction petitions for relief in state court.

Petitioner constructively filed the instant petition on July 30, 2014. (ECF No. 1 at 16.)

III. Facts[1]

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> In 2003, R.K. married defendant. They have three children. At the time of trial (December 2012), a petition for dissolution of marriage was pending and R.K. had two restraining orders against defendant, one from Monterey County and the other from Sacramento County.
>
> On June 3, 2012, defendant's parole agent, Jason Ciraulo, told R.K. that defendant was being released from prison. R.K. was concerned for her safety because defendant contacted her every time he was released from custody. Defendant was released between 6:00 and 8:00 a.m. that day. At 8:37 a.m., he called R.K. from a blocked number, identified himself, told her that he had been released, and that he was traveling on a bus or train. She recognized his voice. It was about three hours from the prison to Sacramento. He threatened, "I'm coming after you guys. I hope you know that. You

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Dhillon, No. C073107 (February 26, 2014), a copy of which was lodged by respondent as Lodged Document No. 7 on November 14, 2014.

2

guys have two hours to live." He also told R.K. that she and her boyfriend "are going to be dead" as well as everyone else living in the house. He also threatened to take their children. R.K. told defendant that she was contacting the police and telling her family. He responded that he did not give "an F" about the police and that he did not care anymore. R.K. claimed that she acted normally. When she explained to him in a calm manner that she had a new relationship with someone she loved and was moving on with her life, defendant became angry and cursed at her. The call lasted almost two minutes.

At 8:39 a.m., R.K. called her boyfriend and told him about defendant's threats. To him, R.K. sounded frightened. He planned to take her to the police department. R.K. believed that she could not call 911 regarding defendant's threats because police officers had told her a few weeks before that if defendant was not at the residence, it was not an emergency. She understood that she had to go to a police station or call the non-emergency number.

At 8:53 a.m., R.K. called Agent Ciraulo and left a message, stating that defendant had called and had threatened her and her family. R.K. told everyone in the house (her brother, her father, and her children) that defendant had called. She was sad, scared, and believed that her life was in danger. She did not leave the house, believing that defendant would find her. While R.K. was waiting for her boyfriend, her brother and her father stayed at the house. R.K. spoke with her mother and sisters and told them that defendant had threatened her; R.K. sounded upset and frightened.

About 11:00 a.m., her brother heard R.K. screaming and cursing. Inside the house, he saw her crying. R.K. held a phone in her hand and said, "He's going to kill us."

About two hours after defendant called R.K., her boyfriend arrived at her house and took her to the police station but it was closed. On the station door, a non-emergency number was listed. R.K. called that number at 11:39 a.m., asking for help at her house.

At 12:58 p.m., Sacramento County Deputy Sheriff Mark Limbird went to R.K.'s house and took her statement. She told the deputy about defendant's call. She seemed nervous and stated she was fearful of defendant, explaining defendant had assaulted her in the past.

At 4:00 p.m., defendant called R.K.'s mother to ask if she knew R.K.'s whereabouts.

That night, R.K. "stayed outside" and "looked around" for defendant, planning to call the police if she saw him. Her family members spent the night with her because they wanted her to be "extra safe."

In the morning of June 4, 2012, defendant had a scheduled meeting with Agent Ciraulo. Ciraulo arrested defendant when he showed up at 4:30 p.m.

3

The prosecutor presented evidence of defendant's prior acts of domestic abuse. In January 2005, defendant was angry, hit R.K. behind the ear, and also hit a glass table with his hand, shattering it and causing glass shards to fly into their four-month-old daughter's hair. He was arrested that day. When defendant was released from custody in March 2005, he went to R.K.'s house. He yelled at R.K. and told her that he was going to kill her, pushing her to the floor. R.K.'s sister called the police. In June 2005, R.K. and defendant reconciled.

Sometime thereafter, R.K. left defendant, taking their children to Monterey to live with her sister and her brother-in-law in a hotel which he managed. Defendant called and threatened to kill R.K. and their children and threatened her sister and her brother-in-law. On May 4, 2006, R.K. and her sister and brother-in-law filed a report with the police. Defendant was arrested in the hotel parking lot. R.K. was afraid and wanted to hide from defendant. The police arranged for R.K. and her children to live in a homeless shelter where they stayed for seven months.

In August 2006, a criminal protective order was issued in Monterey County. Defendant spent about a year in custody. When he was released, he contacted R.K. in person. In 2008 or 2009, R.K. allowed defendant to live in her apartment when he was released from custody related to another incident.

In May 2011, R.K. lived with her parents as did her brother who was friends with defendant. Defendant visited often. R.K. described her relationship with defendant as married but separated. One day, defendant yelled at R.K., held her down, punched her 25 times behind her right ear, and fractured her middle finger. Defendant threatened to kill her if she told anyone. Later that day, defendant, armed with a firearm, threw R.K. against the wall, demanding sex. When she refused, he sexually assaulted her.

In August 2011, defendant arrived at R.K.'s house, went into her room, touched R.K. everywhere and demanded sex. When she refused, he pushed her on the bed where their children were sleeping, held her down, and sodomized her.

Between August 2011 and June 2012, defendant called R.K. from prison multiple times a day. In May 2012, defendant called her from prison and threatened her.

A criminal investigator for the Sacramento County District Attorney's Office testified for the defense. Five months after the current offense, the investigator spoke with R.K.'s sister who reported that R.K. had claimed that defendant called from jail and wanted to resume his relationship with her but she was not interested. When the investigator spoke with her brother, he did not report that R.K. claimed defendant had made threats. On cross-examination, the investigator stated that her sister also reported that R.K. had recounted defendant's threats against her and her boyfriend and that her brother also reported that he heard R.K.

4

> cursing, screaming, and yelling during the phone call with defendant.
>
> With respect to the prior incident in August 2011, a patrol officer testified that he went to the house to investigate a verbal and physical fight. Defendant was arrested because he was a parolee at large, not because of a sexual assault or domestic violence. As the result of the investigation, it was concluded that there had been a verbal argument but not a physical assault.
>
> In prior testimony, R.K. stated that in August 2011, defendant wanted anal sex, she refused. She claimed that he "did it anyways," explaining that if she did not have sex with him, he would have hit her. She also claimed she was "forced" to have sex in May 2011.

People v. Dhillon, 2014 WL 724712, *1-3 (Cal. App. 3 Dist., Feb. 26, 2014).

IV.  Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. 1, 4 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, 132 S. Ct.

5

38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." Marshall v. Rodgers, 133 S. Ct. 1446, 1450 (2013) (citing Parker v. Matthews, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct." Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'").

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, 133 S. Ct. 1088, 1091 (2013).

////

V. <u>Petitioner's Claim</u>

Petitioner claims that his entire trial was "almost literally about petitioner's past crimes rather than commission of the current offenses," which was prejudicial and rendered his trial fundamentally unfair. (ECF No. 1 at 5.) Petitioner contends that the past propensity evidence was "unimportant in relation to everything else the jury considered," and that the jury's verdict was based solely on the prior conduct evidence rather than evidence supporting the instant offense. (<u>Id.</u>) Petitioner argues his petition should be granted, relying on <u>Neder v. United States</u>, 527 U.S. 1, 38 (1999), and <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279 (1993). In his reply, petitioner again argues that admission of the uncharged act evidence was prejudicial, relying primarily on state court authorities. (ECF No. 13 at 14-15.) Respondent contends that petitioner's evidentiary claim is not cognizable on federal habeas review. (ECF No. 11 at 13.) Moreover, respondent argues that because the Supreme Court has not held that the admission of prejudicial evidence violates due process or the right to a fair trial, the California Court of Appeal did not unreasonably apply clearly established federal law by concluding the evidence at issue was properly admitted. (ECF No. 11 at 14.)

The last reasoned rejection of petitioner's first claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court addressed this claim as follows:

> DISCUSSION
>
> Defendant contends the trial court abused its discretion and violated his due process rights in admitting evidence of his prior acts of domestic abuse. We reject defendant's contention.
>
> I. Background
>
> The prosecutor moved in limine to admit, under Evidence Code section 1109, evidence of defendant's prior instances of domestic violence from January and March 2005, May 2006, May 2011, August 2011, and April 2012. The prosecutor argued the current offense was an act of domestic violence -- that is, threatening to kill his spouse and the mother of his children.
>
> At the hearing on the motion, the court noted that an element of criminal threats was whether the victim was "reasonably in sustained fear for her safety and the safety of her immediate family." With respect to all the prior incidents, the court determined

8

the acts were relevant under Evidence Code section 1109. The court found that the acts were a basis for R.K. to be reasonably in sustained fear that defendant would act violently because she "witnessed [defendant] acting violently as a result of anger towards her" (January 2005 incident); she was "the recipient of force by [defendant]" (March 2005 incident); defendant threatened to go to Monterey and kill the victim's sister if she refused to reveal the whereabouts of the victim and then "show[ed] up having made that threat" (May 2006 incident); the victim had been "hit all over [her] body and threatened with a firearm," received injuries including a fractured finger, and was forced to have sex (May and August 2011 incidents); and she had been threatened by defendant when he called her (April 2012 incident). The court found the acts were more probative than prejudicial, finding that proof of the acts (other than the May 2006 incident) would not consume an undue amount of time and would not confuse the jury. Because R.K.'s sister was the victim of the criminal threats in 2006 (and R.K. the victim of stalking), the court determined that, to reduce any confusion, defendant's 2006 section 422 conviction would not be admitted unless the threats to the sister were in issue. The court excluded any mention of the stolen car and defendant's conviction for receiving stolen property in 2006.

II. Analysis

Evidence Code section 1109, subdivision (a)(1) provides, in relevant part, as follows: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352."

"'"The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense."' [Citation.] Section 1109 was intended to make admissible a prior incident 'similar in character to the charged domestic violence crime, and which was committed against the victim of the charged crime or another similarly situated person.' [Citation.] Thus, the statute reflects the legislative judgment that in domestic violence cases, as in sex crimes, similar prior offenses are 'uniquely probative' of guilt in a later accusation. [Citation.] Indeed, proponents of the bill that became section 1109 argued for admissibility of such evidence because of the 'typically repetitive nature' of domestic violence. [Citation.] This pattern suggests a psychological dynamic not necessarily involved in other types of crimes." (People v. Johnson (2010) 185 Cal.App.4th 520, 531-532, fn. omitted (Johnson).)

"By its incorporation of [Evidence Code] section 352, section 1109, subdivision (a)(1) makes evidence of past domestic violence inadmissible only if the court determines that its probative value is 'substantially outweighed' by its prejudicial impact. We review a challenge to a trial court's decision to admit such evidence for abuse of discretion." (Johnson, supra, 185 Cal.App.4th at p. 531, fn. omitted.)

9

"'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging."'" (People v. Bolin (1998) 18 Cal.4th 297, 320 (Bolin).)

"Relevant factors in determining prejudice include whether the prior acts of domestic violence were more inflammatory than the charged conduct, the possibility the jury might confuse the prior acts with the charged acts, how recent were the prior acts, and whether the defendant had already been convicted and punished for the prior offense(s)." (People v. Rucker (2005) 126 Cal.App.4th 1107, 1119 (Rucker).)

Here, admission of the prior incidents was not an abuse of discretion. The incidents were not remote in time nor were they any more inflammatory than the charged conduct of threatening to kill his spouse and the mother of his children. Notwithstanding defendant's claim to the contrary, defendant's prior conduct did not uniquely tend to evoke an emotional bias against defendant as an individual. (Bolin, supra, 18 Cal.4th at p. 320.)

Defendant argues the prior incidents with R.K. were "much more lurid and vivid" and the inflammatory nature alone should have compelled exclusion. He also argues that the majority of the evidence -- R.K.'s testimony, the lengthy restraining orders, and cross-examination -- covered the uncharged acts of domestic violence. He claims the prior uncharged acts were, for the most part, dissimilar to the current offenses since the prior acts did not involve "touching" anyone but R.K., other than some glass shards which landed on their daughter. Defendant also claims the evidence was "cumulative, overly long, too time-consuming, inflammatory, and would lead the jury to want to punish [defendant]."

The probative value of the prior incidents of domestic violence was great in that the prosecutor was required to prove for criminal threats that R.K. was reasonably in sustained fear for her safety and the safety of her immediate family. Defendant had acted violently as a result of anger towards her over the years, hitting and pushing her, stalking her, threatening her, fracturing her finger, and forcing her to have sex. She had obtained two restraining orders against him. "Domestic violence is defined as including 'intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious injury to himself or herself, or another.'" (Rucker, supra, 126 Cal.App.4th at p. 1118.) Defendant's prior "domestic violence" was similar to the current "domestic violence" and reflects defendant's ongoing terrorization of the victim. While the prejudicial effect of the May and August 2011 incidents was increased by the fact that defendant was not convicted or punished for rape or sodomy (id. at p. 1119; People v. Ewoldt (1994) 7 Cal.4th 380, 405), the jury also learned that defendant had spent time in custody for various crimes. And the jury learned from defense evidence that defendant was not

> arrested for an act of sexual assault in August 2011 but instead for being a parolee at large.
>
> Defendant claims "it cannot be shown beyond a reasonable doubt that the mountain of the inflammatory propensity evidence did not contribute to the verdict." We disagree. It is unlikely the jury disbelieved the evidence against him that he threatened R.K. in June 2012 but convicted him of the lesser offense of attempted criminal threats on the basis of the prior domestic violence. The court instructed the jury on the use of the uncharged acts, telling the jury not to consider the evidence for any purpose other than as it relates to whether "[R.K.] reasonably was fearful." We presume the jury followed the trial court's instructions. (People v. Waidla (2000) 22 Cal.4th 690, 725.) Indeed, the jury concluded defendant threatened R.K. but that his threat did not have its intended effect and convicted him of attempted criminal threats.
>
> We do not find any error. Having rejected defendant's claim, we also reject his argument that the admission of the propensity evidence violated his due process rights. (People v. Falsetta (1999) 21 Cal.4th 903, 913-915, 917; People v. Johnson (2000) 77 Cal.App.4th 410, 417-420.)

People v. Dhillon, 2014 WL 724712 at *3-5.

A state's criminal law, such as an evidence code provision, does not violate the Due Process Clause "unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." Montana v. Egelhoff, 518 U.S. 37, 47 (1996). The United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003). In fact, the Supreme Court has expressly left open this question. See Estelle, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Thus, petitioner can point to no Supreme Court precedent establishing that admission of propensity evidence, as here, to lend credibility to a domestic violence victim's allegations, and thus relevant to the crimes charged, is unconstitutional. Accordingly, the state appellate court's decision with respect to this claim is not

1  contrary to clearly established federal law.  See also Mejia v. Garcia, 534 F.3d 1036, 1046 (9th
2  Cir. 2008) (holding that state court had not acted objectively unreasonably in determining that the
3  propensity evidence introduced against the defendant did not violate his right to due process);
4  Alberni v. McDaniel, 458 F.3d 860, 863-67 (9th Cir. 2006), cert. denied, 549 U.S. 1287 (2007)
5  (denying the petitioner's claim that the introduction of propensity evidence violated his due
6  process rights under the Fourteenth Amendment because "the right [petitioner] asserts has not
7  been clearly established by the Supreme Court, as required by AEDPA"); United States v.
8  LeMay, 260 F.3d 1018 (9th Cir. 2001) (Federal Rule of Evidence 414, permitting admission of
9  evidence of similar crimes in child molestation cases, under which the test for balancing probative
10 value and prejudicial effect remains applicable, does not violate the due process clause).  This
11 precedent forecloses petitioner's due process challenge to the admission of evidence regarding his
12 prior bad acts.[3]

13       Further, any error in admitting this testimony could not be said to have "a substantial and
14 injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S.
15 619, 637 (1993); see also Penry v. Johnson, 532 U.S. 782, 795 (2001) ("Even if our precedent
16 were to establish squarely that the prosecution's use of the [evidence] violated Penry's Fifth
17 Amendment privilege against self-incrimination, that error would justify overturning Penry's
18 sentence only if Penry could establish that the error "had substantial and injurious effect or
19 influence in determining the jury's verdict.").  Here, the record reflects that the state trial judge
20 struck an appropriate balance between petitioner's rights and the clear intent of the California
21 legislature that evidence of prior acts be admitted in domestic violence prosecutions.  The
22 admitted evidence was probative and relevant to assist the jury in assessing the impact of the
23 threat on the victim.  The trial court heard motions in limine filed by both the prosecutor and
24 defense counsel concerning the admission of uncharged acts of domestic violence evidence, as
25 well as uncharged acts unrelated to domestic violence.  (Reporter's Transcript ("RT") at 9-47; CT

---

[3] Petitioner's reliance on Neder, 527 U.S. at 38, and Sullivan, 508 U.S. at 279, is unavailing because such cases are inapposite.  In both Neder and Sullivan, the prisoner alleged a jury instruction error, and neither case addressed the alleged wrongful admission of propensity evidence in violation of the Fourteenth Amendment Due Process Clause.

76-77.) The trial court also held a hearing under California Evidence Code § 402, where R.K. testified and was subject to cross-examination by defense counsel. (RT 49-73.)

The trial court ruled that as to petitioner's prior acts of domestic violence, and the events of March 22, 2005, and August 2011, the jury would not be instructed pursuant to California Evidence Code § 1101, but would be instructed pursuant to California Evidence Code § 1109. (CT 76-77.) As to the events of May 4, 2006, the trial court also ruled that § 1109 would apply, but that petitioner's conviction would not be admitted unless the threats made to the sister of the victim became at issue through testimony, and ruled that any mention of the stolen vehicle would be excluded. (CT 77.) As to the evidence from events occurring in May 2011, the trial court ruled that the jury would be instructed pursuant to § 1101 as well as § 1109, because the evidence constituted threats; the trial court further ruled that the firearm was relevant to the victim's fear. (CT 77.) The trial court ruled that § 1109 would apply to evidence from the April 10, 2012 incident, and would be admissible if the victim was in reasonable fear. (CT 77.) Following the § 402 hearing, the trial court ruled that the testimony regarding Monterey, the threats to the victim's sister, and the sexual references would be allowed. (CT 98.) The trial court explained that

> this element of the complaining witness reasonably being in a sustained fear is both objective and subjective. And if this is, in its entirety, a relationship that is -- that has fear of physical injury wove throughout it, and from her testimony it appears at least the sexual aspect of the relationship is woven through with force, I think we do a disservice to the jury if we limit it to that. . . . If we exclude the references to sex, we're doing a disservice to the jury. So I'm going to allow it. [¶] Certainly, my premise here is based on if this witness's testimony is believed, certainly, it's subject to cross-examination and rebuttal from other evidence.

(RT 72.)

In addition, the trial court instructed the jury at the close of the evidence that if they found petitioner had committed the prior acts of domestic violence they could, but were not required to, infer that the defendant had a disposition to commit domestic violence offenses. (CT 130.) The jury was also instructed that if they found that petitioner had such a disposition, they could, but were not required to, infer that he was likely to have committed the charged offenses. (CT 130.)

1   These instructions did not compel the jury to draw an inference of propensity; the instructions

2   simply allowed it to do so.  The jury was directed that it should not consider petitioner's prior

3   conduct, or evidence thereof, as proof that petitioner committed the crimes charged in the

4   Information.  (CT 130.)  The jury was instructed that if the jury concluded that petitioner

5   "committed the uncharged domestic violence, that conclusion is only one factor to consider along

6   with all the other evidence.  It is not sufficient by itself to prove that [petitioner] is guilty of the

7   charged offenses."  (CT 130.)

8   Moreover, in response to the jury's first question during deliberations, seeking

9   clarification concerning the lesser charge of attempted criminal threats (CT 114), the trial court

10  further instructed the jury as follows:

> 1) A defendant may be found guilty of attempted criminal threat only if the People prove the following beyond a reasonable doubt:
>
> Acting with the specific intent to commit the offense of criminal threat, a defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action.
>
> A defendant acts with the specific intent to commit the offense of criminal threat only if he or she specifically intends to threaten to commit a crime resulting in death or great bodily injury.
>
> And
>
> 2[)] A defendant intends that the threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety.
>
> If a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not actually cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat.

25  (CT 115-16.)  In their second and third questions, the jury asked for the read back of testimony

26  from the victim RK, Criminal Investigator Cathy Barker, Parole Officer Jason, and Shawn Singh,

27  RK's fiancée, (CT 116-17), and asked for additional copies of the jury instructions, copies of the

28  parties' stipulations, and the preliminary hearing proceedings (CT 117).

In addition to the above, the jury instructions given at petitioner's trial, viewed in their entirety, correctly informed the jury that the prosecution had the burden of proving all elements of each charge against petitioner beyond a reasonable doubt and that the jury must follow the law as instructed.  (CT 122, 125, 126, 130, & 134,)  The jury is presumed to have followed all of these instructions.  Weeks v. Angelone, 528 U.S. 225, 234 (2000); Brown v. Ornoski, 503 F.3d 1006, 1018 (9th Cir. 2007).  Although the prior acts of domestic violence evidence were potentially powerful, "[the fact] that prior acts evidence is inflammatory is not dispositive in and of itself." LeMay, 260 F.3d at 1030.  Moreover, the prior act evidence was no more inflammatory than the charged conduct of petitioner threatening to kill his spouse and the mother of his children. Further, any threat of improper prejudice flowing from the uncharged acts evidence was mitigated by the trial court's instruction to the jury that if they found petitioner committed prior acts of domestic violence, that was not sufficient by itself to prove beyond a reasonable doubt that he committed the charged offenses.

Therefore, the undersigned concludes that the admission of petitioner's prior acts of domestic violence did not violate any right clearly established by federal precedent or result in prejudice under the circumstances of this case.  See Chavarria v. Hamlet,  2003 WL 1563992, *11 (N.D. Cal. March 25, 2003) (Chavarria failed to demonstrate that California Evidence Code § 1109, which allows propensity evidence in the limited area of domestic violence cases, violates due process, or that the state court's rejection of his due process claim was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court.). Accordingly, petitioner is not entitled to federal habeas relief with respect to his due process claim.

VI. Conclusion

Accordingly, petitioner's application for a writ of habeas corpus is denied.

Before petitioner can appeal this decision, a certificate of appealability must issue.  28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability

indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue.  Fed. R. App. P. 22(b).

     For the reasons set forth above, the undersigned finds that petitioner has not made a showing of a substantial showing of the denial of a constitutional right.

     Accordingly, IT IS HEREBY ORDERED that:

     1.  Petitioner's application for a petition for writ of habeas corpus is denied; and

     2.  The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

Dated:  January 9, 2015

/dhil1833.157

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE